UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

WILLIAM PAGE

    v.                                                     C.A. 11-217-ML

A. T. WALL

## MEMORANDUM AND ORDER

Before the Court is the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition")(Docket No. 1) filed, *pro se*, by William Page ("Page"). The State of Rhode Island (the "State") has moved to dismiss the Petition. For the reasons stated herein, the State's Motion to Dismiss Petition for Writ of Habeas Corpus (Docket No. 7) is GRANTED.

**I. Facts and Travel**

The facts of the criminal offense of which Page was convicted and the proceedings in the Rhode Island state courts are set forth, in great detail, in State v. Page, 709 A.2d 1042 (R.I. 1998); Page v. State, 995 A.2d 934 (R.I. 2010), and State v. Lambert[1], 705 A.2d 957 (R.I. 1997).

---

[1] The Rhode Island Supreme Court ("RISC") affirmed the conviction of Page's accomplice, Michael Lambert ("Lambert") of second-degree murder and committing a crime of violence while armed with a firearm.

On March 3, 1995, then eighteen year old Page and his contemporary, Michael Lambert, were indicted for the murder of Sylvester Gardiner ("Gardiner"), a homeless man. State v. Page, 709 A.2d at 1043. Page and Lambert had encountered Gardiner, who was living under an I-95 overpass in downtown Providence, on Thanksgiving Day, November 24, 1994. State v. Lambert, 705 A.2d at 959. Lambert was throwing rocks and Gardiner shouted at the youths. Id. In the ensuing confrontation, Page or Lambert pointed a BB gun belonging to Lambert at the homeless man.[2] Id. The pair then proceeded to deliver a "savage and brutal beating" to Gardiner which resulted in his death. Id. According to the medical examiner who performed the autopsy, Gardiner's facial bones had been completely destroyed and an axe handle, on which Page's fingerprints had been found, was impaled in Gardiner's face. State v. Page, 709 A.2d at 1043. The medical examiner noted in her report that, had she been told that Gardiner's body been found near train tracks, she would have thought that he had been hit by a train. Id.

Page and Lambert were arrested two days later and were questioned separately by the police. Id. After being advised of their constitutional rights, each gave a statement that implicated

---

[2] The RISC noted that the accounts of Page and Lambert about what transpired differed significantly. State v. Lambert, 705 A.2d at 959.

them both in Gardiner's murder. Id. Subsequently, Page moved to suppress the statement he had given to the police. Id. A Superior Court justice conducted an evidentiary hearing, at which three Providence police officers testified. Id. According to the officers' testimony, Page had been advised of his Miranda[3] rights prior to questioning. Id. Page also signed a written statement waiving his Miranda rights. Id. Page testified on his own behalf, asserting that he had requested counsel but was denied access to an attorney by the police. Id. His "request," however, was limited to saying "Whaz [sic] up with a lawyer?," after which statement Page was advised under Miranda; he then signed a waiver form. Id. Page's motion to suppress his statement was denied. Id.

Following this denial, Page waived his right to a trial by jury and agreed to being tried by a justice of the Superior Court on stipulated proof consisting of documents and exhibits. Id. at 1044. In December 1995, Page was convicted of murder in the first degree and of committing a crime of violence while armed with a firearm. Id. On May 3, 1996, after the conclusion of Lambert's trial, Page was sentenced to life imprisonment without the possibility of parole for the murder and an additional ten years' imprisonment, to be served concurrently, for the firearm offense. Id. at 1043, 1044.

---

[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Page filed an appeal of his conviction and sentence with the RISC, asserting that (1) denying his motion to suppress was reversible error; (2) his concurrent ten-year sentence was cruel and unusual; and (3) he was denied the effective assistance of counsel during his trial and sentencing. Id. On April 8, 1998, the RISC denied and dismissed Page's appeal and affirmed the judgment of the Superior Court. Id. at 1047. Regarding Page's motion to suppress, the RISC concluded that Page "was well informed of his right to counsel and chose to waive it rather than invoke it." Id. at 1046. The RISC determined that Page's appeal of his ten-year concurrent sentence was based on an erroneous predicate. Although Page contended that the sentence was imposed under Rhode Island's habitual offender statute, R.I. Gen. Laws § 12-19-21, the sentence was actually imposed for a separate firearm offense. Id. Moreover, in the absence of a Rule 35 motion, the RISC deemed the claim premature. Id. With respect to Page's assertion that he was denied the effective assistance of counsel at trial and sentencing, the RISC dismissed the claim without prejudice, declining to review Page's claims in the absence of a "'fully developed record and a decision of the Superior Court regarding whether defense counsel's alleged failings were a "genuine manifestation of ineffective assistance."'" Id. at 1046-1047 (citations omitted).

Page applied for postconviction relief in the Superior Court,

alleging ineffective assistance by both his trial counsel and his appellate counsel (a different attorney). Page v. State, 995 A.2d at 938. At a postconviction relief hearing before the same justice who had conducted Page's 1995 murder trial and imposed sentence, Page's trial counsel was the only witness.[4] Id. Page's counsel explained that he had considered, but decided against, a defense based on insanity or diminished capacity in light of an evaluating psychiatrist's statement that Page was "one of the most dangerous individuals" the psychiatrist had ever met. Id. at 938. Likewise, Page's attorney concluded that using intoxication as a defense would not be a successful strategy, although he did use evidence of intoxication in his motion to suppress Page's incriminating statements after his arrest. Because his attempts to reach a plea agreement with the Attorney General's Office were unsuccessful, Page's counsel focused on sentencing. Id. Given the incriminating evidence against Page, including gruesome photographs of the victim, Page's attorney advised his client to proceed with a jury-waived trial on the basis of stipulated facts. Id.

After considering the testimony of Page's attorney, the hearing justice rejected Page's claim, finding that, in light of the overwhelming physical evidence, the attorney was left with no

---

[4] The hearing justice declined to consider Page's claims regarding his appellate counsel on the grounds that the Superior Court was not the proper forum for such claims. Id. at 942.

5

realistic trial strategy. The justice further determined that the attorney's investigation and decision regarding possible defenses had been reasonable, as was the advice to proceed with a jury-waived trial on stipulated facts, which preserved the suppression argument for appeal. Id. at 939-940. With respect to counsel's performance in the sentencing phase, the hearing justice stated that Page's sentence of life without the possibility of parole had been imposed "in spite of [trial counsel's] efforts" and noted that he "doubt[ed] very much that [counsel] could have presented anybody that would have changed [his] mind." Id. at 941.

Page appealed the denial of his petition for postconviction relief to the RISC. On May 26, 2010, the RISC determined that Page did not receive ineffective assistance of counsel during the guilt or sentencing phase and that the sentence of life without the possibility of parole was appropriate. The RISC found that Page did, however, receive ineffective assistance of appellate counsel. Page v. State, 995 A.2d at 936, 951. With respect to Page's appellate counsel, the RISC concluded that counsel's failure to seek a statutorily required *de novo* review of Page's sentence constituted ineffective assistance of counsel. Id. at 948-949. The RISC then proceeded to provide a remedy for counsel's failure by conducting a *de novo* review. After considering the aggravating factors relevant to sentencing (and the sole mitigating factor - Page's age), the RISC ratified the trial justice's imposition of a

6

sentence of life imprisonment without the possibility of parole. Id. at 950-951.

Page now seeks relief by way of a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. As before, Page asserts ineffective assistance of both trial counsel and appellate counsel. Specifically, Page contends that his trial counsel failed to (1) investigate a defense; (2) mitigate punishment; (3) advise on the consequences of (a) waiving a trial by jury and (b) stipulating to the State's evidence following the denial of the motion to suppress. Petition 6. Page also alleges that his appellate counsel "failed to raise, brief, and argue a challenge to [a] sentence of life without parole." Id. at 8.

The Attorney General has filed a motion to dismiss Page's petition. The time for Page's response to the State's motion has since passed and no objection had been filed as of the date of this Memorandum and Order.

**II. Discussion**

A. Section 2254 Petition

The scope of federal habeas review has been significantly limited by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Hurtado v. Tucker, 245 F.3d 7, 15 (1st Cir. 2001)("As amended by AEDPA, § 2254 'places a new constraint on the power of a federal court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on

7

the merits in state court.'")(quoting Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

Pursuant to 28 U.S.C. § 2254,

> "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State Court unless the adjudication of the claim . . .
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

As the Supreme Court explained in Williams, a state court decision "would be 'contrary to' the Court's clearly established precedent if it 'applie[d] a rule that contradicts the governing law set forth in [the Court's] case.'" Hurtado v. Tucker, 245 F.3d at 15 (quoting Williams, 529 U.S. at 405.) Likewise, a state court decision is considered "'contrary to th[e] Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from our precedent.'" Id. (quoting Williams, 529 U.S. at 406).

By contrast, "a state court decision would involve an 'unreasonable application of' clearly established Supreme Court precedent if it 'identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that

8

principle to the facts of the prisoner's case.'" <u>Hurtado v. Tucker</u>, 245 F.3d at 15-16 (quoting <u>Williams</u>, 529 U.S. at 413).

In a review by a Federal Court of a petition for a writ of habeas corpus under Section 2254, the "determination of a factual issue made by a State court is presumed to be correct." 28 U.S.C. § 2254 (e)(1). The applicant has "the burden of rebutting the presumption of correctness by clear and convincing evidence." <u>Id.</u>

B. Ineffective Assistance of Counsel

Under the standard established by the Supreme Court in <u>Strickland v Washington</u>, to succeed on his claim of ineffective assistance of counsel, Page must demonstrate both deficient performance by counsel and resulting prejudice. <u>Tevlin v. Spencer</u>, 621 F.3d 59, 66 (1st Cir. 2010)(citing <u>Strickland v. Washington</u>, 466 U.S. 668, 678, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). <u>Strickland</u> provides a detailed description of the two components of the analysis:

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 678, 104 S.Ct. 2052.

To demonstrate ineffectiveness under <u>Strickland</u>, Page must show "that counsel's representation fell below an objective

9

standard of reasonableness." Strickland, 466 U.S. at 688, 104 S.Ct. 2052. As the First Circuit has stated, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,'" Pina v. Maloney, 565 F.3d 48, 54 (1st Cir. 2009)(internal citation omitted), and counsel's performance is considered "'deficient only if no competent attorney would have acted as he did." Wright v. Marshall, – F.3d —, 2011 WL 3849756 (1st Cir. Sept. 1, 2011)(quoting Tevlin v. Spencer, 621 F.3d 59 at 66)).

To demonstrate prejudice, Page must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland at 694, 104 S.Ct. 2052. To that end, Page is not required to prove that "'counsel's deficient conduct more likely than not altered the outcome'" of his proceeding, but he must establish "'a probability sufficient to undermine confidence in [that] outcome.'" Tevlin v. Spencer, 621 F.3d at 66 (quoting Porter v. McCollum, – U.S. –, 130 S.Ct. 447, 175 L.Ed.2d 398 (2009) (quoting Strickland, 466 U.S. at 6930694, 104 S.Ct. 2052)).

C. This Case

A careful review of the record[5] submitted by the State

---

5

The State has submitted copies of the RISC's opinions regarding Page's motion to suppress his statements and regarding the denial of his request for post conviction relief, as well as the RISC's opinion affirming Lambert's appeal of his conviction. In

10

persuades this Court that there was no constitutional violation in the state court proceedings and that Page cannot meet the standard set by the AEDPA.

Page initially contends that his trial counsel failed to investigate a defense. As counsel explained at the post conviction relief hearing before the trial justice, he investigated the possibility of an insanity or diminished capacity defense. Faced with the statement by a consulting psychiatrist that Page was "one of the most dangerous individuals" the psychiatrist had ever met, counsel decided that such testimony would not be helpful to his client at trial. Page v. State, 995 A.2d at 938. Counsel also concluded that, although Page told him that he had smoked marijuana and consumed alcohol on the day of the murder, intoxication would not be a successful strategy. Id. at 939. However, at the suppression hearing, Page's counsel did argue that his client was intoxicated during the time of his arrest and that he repeatedly asked for an attorney in the course of his police interrogation. The trial justice rejected those contentions and denied Page's motion. The RISC subsequently affirmed that denial. State v. Page, 709 A.2d 1042 (R.I. 1998).

There is nothing in the record to indicate that any other

---

addition, the State has provided transcripts of (1) the hearing on Page's motion to suppress, (2) the jury-waived trial, (3) the sentencing hearing, and (4) the hearing on postconviction relief, and both the State's and Page's appellate briefs regarding the trial justice's denial of postconviction relief.

11

defense strategies would have been available to Page and/or that trial counsel failed to consider such avenues. Trial counsel's consideration of defenses based on insanity and/or intoxication and, after some exploration, counsel's rejection of those defenses, "fall[] well within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Further, Page contends that counsel failed to advise him of the consequences of waiving his right to a jury trial and, instead, of stipulating to the State's evidence. Counsel explained in detail at the postconviction hearing how he arrived at this trial strategy in light of the evidence against his client. Hrg. Tr. 25:4-22 (April 15, 2003). In addition to the inculpating statements Page had made after his arrest, the State had evidence of Page's bloody fingerprints on the ax handle imbedded in the victim's skull. Photographs of the victim were extremely graphic and counsel feared that a jury could not be fair and impartial when confronted with such images. Id. at 25:8-13. Faced with such inculpatory evidence, counsel determined, in consultation with his client and with Page's stepfather, that the best course of conduct was to pursue a plea bargain and/or to attempt to minimize the sentence his client would receive. Id. at 25:15-18. The State, however, refused to negotiate a plea bargain in the case, and counsel concluded that a jury waived trial, although unorthodox, was appropriate. Id. at 27:8-28:10. Unlike a guilty plea, a

12

trial, whether it was conducted before a jury or a judge, would also preserve the issue of whether Page's statements should have been suppressed. Id. at 28:12-24. Convinced that his client would be convicted of first degree murder in light of the overwhelming evidence, counsel then attempted to mitigate Page's sentence by having his client stipulate to the State's facts, rather than subject the victim's family to the ordeal of a trial. Id. at 29:3-30:9. At the jury-waived trial, Page confirmed that he had been apprised of his constitutional rights to be tried before a jury and that he was ready and willing to proceed without a jury. Hrg. Tr. 84:17-24 (Dec. 6, 1995). Page also signed a document attesting to this fact after discussing the matter at length with counsel and with his stepfather. Id. at 84:25-86:20.

In sum, Page offers no support for the contention that counsel failed to apprise him of the consequences of submitting to a jury-waived trial on stipulated evidence. Given the overwhelming evidence against Page, and the unwillingness of the State to enter a plea bargain, counsel's decision to establish at least one mitigating circumstance to be considered at sentencing appears to fall well "within the range of competence demanded of attorneys in criminal cases." Page v. State, 995 A.2d at 942 (quoting Rodriques v. State, 985 A.2d 311, 315 (R.I. 2009)).

Finally, Page argues that he received ineffective assistance of counsel because his trial counsel failed to "mitigate

punishment." Pet. at Page 6. As previously noted, counsel advised Page to stipulate to the State's evidence (and spare the victim's family from hearing details of the murder) as a sign of contrition to be considered at sentencing. Hrg. Tr. 30:6-16 (Apr. 15, 2003). At the sentencing hearing, counsel introduced Page's stepfather as a witness, who gave an impassioned plea to provide Page with needed help. Hrg. Tr. 117:14-123:7. Counsel appealed to the mercy of the sentencing judge by pointing out that Page chose to forego a trial to spare the victim's family further tragedy. Id. at 127:21-25, 135:6-136:4. Counsel also emphasized Page's youth and the difficulties he had endured in his childhood. Id. at 129:4-6, 131:12-16, 132:10-13.

Despite counsel's plea for leniency, the sentencing justice, who described Gardiner's murder as "gruesome," "atrocious," and "barbaric," imposed a sentence of life without possibility of parole. Id. at 136:21-25. The justice acknowledged Page's age of then 20 years, but noted that he had already "done things that mature adults wouldn't dream of doing in their worst nightmares." Id. at 137:15-17. The justice also stated that he was convinced that Page was, even at his age, incorrigible and beyond rehabilitation and that society had to be protected from him. Id. at 139:1-6.

At the subsequent postconviction relief hearing, the hearing

14

justice[6] explained that, although counsel had done what he could to minimize his client's sentence, he doubted "very much that [counsel] could have presented anybody that would have changed [the justice's] mind that day, or today, for that matter." Hrg. Tr. at 56:4-11 (Apr.15, 2003). He noted that the sentence of life without parole was "based upon the egregious, horrendous activities that occurred in this murder" and could not be blamed on counsel. Id. at 55:25-56:3.

The RISC, in considering Page's appeal from the denial of postconviction relief, concluded that, in light of the fact finding by the hearing justice, and the RISC's own independent review of the record, Page had not been deprived of effective assistance of counsel at sentencing. This Court agrees. There is nothing to indicate that counsel failed to present any mitigating factors at sentencing or that such factors even existed. Once the effort to obtain an agreement for eventual parole through a plea bargain had been foreclosed, counsel attempted to preserve the suppression issue and to mitigate sentencing. Since he could not change the circumstances of Page's crime, he focused on Page's youth, his tragic childhood, and his willingness to stipulate to the State's evidence and forego a trial. The statements of the justice at sentencing and at the post conviction hearing indicate that nothing

---

[6]

As noted before, the same justice presided at the suppression hearing, the trial, the sentencing and the hearing on postconviction relief.

counsel could have presented would have resulted in a different outcome.

With respect to his appellate counsel, Page contends that counsel "failed to raise, brief, and argue a challenge to [a] sentence of life without parole." Pet. at Page 8. No lengthy discussion is required regarding this issue. The RISC agreed with Page's contention on this issue and then proceeded to provide the appropriate remedy. Appellate counsel had appealed only Page's ten-year concurrent sentence for the firearm offense. However, pursuant to R. I. Gen. Laws § 12-19.2-5[7], Page was statutorily entitled to a *de novo* review by the RISC of his sentence of life imprisonment without parole. The RISC, determining that Page had received ineffective assistance of appellate counsel, provided, as a remedy, the statutorily required *de novo* review of that part of Page's sentence. Based on the factors set forth in R. I. Gen. Laws

---

[7]
R. I. Gen. Laws § 12-19.2-5 provides:
 The defendant shall have the right to appeal a sentence of life imprisonment without parole to the supreme court of the state in accordance with the applicable rules of court. In considering an appeal of a sentence, the court, after review of the transcript of the proceedings below, may, in its discretion, ratify the imposition of the sentence of life imprisonment without parole or may reduce the sentence to life imprisonment.

16

11-23-2[8], the evidence in the case, the findings of the trial justice, and the personal history, character, record, and propensities of Page, the RISC agreed that the sentence of life without possibility of parole was appropriate. Page v. State, 995 A.2d at 950.

Nothing in the record submitted to this Court indicates that Page can rebut the presumption of correctness applicable to the findings of fact by the hearing justice or the reviewing state court. The RISC's determination that Page was not deprived of his constitutional right to effective representation by trial counsel and the provided remedy of *de novo* review of Page's sentence to cure the ineffective assistance by appellate counsel are not "contrary to, or involve[] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

**Conclusion**

For all of the foregoing reasons, the State's Motion to

---

[8]

R.I. Gen. Laws § 11-23-2 provides seven enumerated grounds for the imposition of life without parole in a first degree murder case. The RISC determined that the appropriate ground in this case was the presence of "torture or an aggravated battery to the victim." Page v. State, 995 A.2d at 949; R. I. Gen. Laws § 11-23-2(4).

Dismiss Petition for Writ of Habeas Corpus is GRANTED.

SO ORDERED.

<u>/s/ Mary M. Lisi</u>

Mary M. Lisi
Chief United States District Judge

October 27, 2011